## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON BUCHANAN, | : | Civil No. 3:23-cv-1395 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN OF SCI-FAYETTE, | : | |
| PA ATTORNEY GENERAL'S OFFICE, | : | |
| | : | |
| Respondents | : | |

### MEMORANDUM

Petitioner Jason Buchanan ("Buchanan") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), seeking relief from an aggregate sentence of 312 to 624 months' imprisonment entered in the Court of Common Pleas of Luzerne County, Pennsylvania, in criminal case CP-40-CR-0000751-2018, for rape of a child and related offenses. The petition is ripe for disposition. For the reasons discussed below, the Court will deny the petition.

## I.   State Court Factual Background & Procedural History[1]

On March 16, 2018, the Commonwealth charged Buchanan with rape of a child, statutory sexual assault, sexual assault, aggravated indecent assault of a child, aggravated indecent assault (complainant less than 16 years of age), indecent assault (person less than

---

[1]   A federal habeas court may take judicial notice of state court records. *Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets in the Court of Common Pleas of Luzerne County and the Pennsylvania Superior Court.

13 years of age), indecent assault (person less than 16 years of age), unlawful contact with minor, and corruption of minors, after his minor step-daughter accused him of repeatedly sexually abusing her when she was between the ages of 8 and 15. *Commonwealth v. Buchanan*, No. CP-40-CR-0000751-2018 (Pa. Ct. Com. Pl. Luzerne Cnty.). Following a jury trial, Buchanan was found guilty of all offenses. *Id.* On February 6, 2020, the trial court sentenced Buchanan to an aggregate period of 336 to 672 months in prison. *Id.* The trial court also informed Buchanan that he would be subject to lifetime registration pursuant to Subchapters H and I of the Sexual Offenders Registration and Notification Act ("SORNA"). *Id.*

Buchanan filed post-sentence motions. *Id.* On June 8, 2020, the trial court granted Buchanan's motion for reconsideration of the sentence imposed for his conviction of aggravated indecent assault (complainant less than 16 years of age), and his SORNA registration requirements. *See Commonwealth v. Buchanan*, 251 A.3d 1229 (Table), 2021 WL 944420, at *1 (Pa. Super. 2021). The trial court ultimately re-sentenced Buchanan to a new aggregate sentence of 312 to 624 months in prison and imposed new SORNA registration requirements. *See id.* The trial court denied Buchanan's other requests for relief in his post-sentence motions. *See id.*

Buchanan filed a timely direct appeal. *See Commonwealth v. Buchanan*, No. 858 MDA 2020 (Pa. Super. 2020). On March 12, 2021, the Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Buchanan*, 2021 WL 944420.

2

Buchanan did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On December 1, 2021, Buchanan filed a counseled petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act, 42 PA. CONS. STAT. §§ 9541-46, alleging ineffective assistance of counsel.  *See Commonwealth v. Buchanan*, 299 A.3d 867 (Table), 2023 WL 3167491, *1 (Pa. Super. 2023).  Following a hearing, the PCRA court denied Buchanan's PCRA petition on July 18, 2022.  *See id.*  Buchanan filed a notice of appeal with the Pennsylvania Superior Court.  *Commonwealth v. Buchanan*, No. 1105 MDA 2022 (Pa. Super.).  On May 1, 2023, the Superior Court affirmed the order of the PCRA court and found that Buchanan was not entitled to any post-conviction relief.  *Commonwealth v. Buchanan*, 2023 WL 3167491.

Buchanan filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).

## II.   **Habeas Claims Presented for Federal Review**

In the habeas petition, Buchanan generally alleges that he received ineffective assistance of counsel and that he raised this ineffectiveness claim in his PCRA petition. (Doc. 1, pp. 5-6).  The Court therefore construes Buchanan's habeas petition as seeking federal review of the following issues:

- Ground One: Trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument.

- Ground Two: Trial counsel was ineffective for failing to object to questions posed by the prosecutor to the victim's mother.

- Ground Three: Trial counsel was ineffective for failing to object to the non-responsive opinion testimony of the Commonwealth's expert, Roberta Fratzola.

- Ground Four: Trial counsel was ineffective for withdrawing his motion to pierce the Rape Shield Law.

(Doc. 1).

## III.   Legal Standards

### A.   Exhaustion and Procedural Default

Before the federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirement of section 2254(b), which requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting the claim. *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). It also requires the petitioner to preserve each claim at the state appellate level. *See Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing *O'Sullivan*, 526 U.S. at 844-45). The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19.

Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at…trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a

"constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496).

This requires that the petitioner supplement his claim with "a colorable showing of factual

innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477

U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of

factual innocence. *Schlup*, 513 U.S. at 324.

### B.  Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore,

that review on the merits of the issues presented in a habeas petition is warranted, the

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

>  (1) [the decision] was contrary to, or involved an unreasonable application of,
>  clearly established Federal law, as determined by the Supreme Court of the
>  United States; or
>
>  (2) [the decision] was based on an unreasonable determination of the facts in
>  light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence

existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)(3)). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### C. Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will

not be second-guessed by post-hoc determinations that a different trial strategy would have

fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446

U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless

argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d

Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable

probability that, but for counsel's deficient performance, the outcome of the proceeding

would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id*. Moreover, the petitioner

must show that he or she had a reasonable likelihood of prevailing on the motion at issue,

and having prevailed on the motion, it was also reasonably likely that the result of the trial

would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy

both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002).

The inquiry may begin with either the deficient performance or prejudice prong, and the

9

court is not required to consider the second prong of the test if the petitioner is unable to

satisfy the first one.  *Strickland*, 466 U.S. at 697.

## IV.   Discussion

### A.   Ground One—Trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument

Buchanan first alleges that trial counsel was ineffective for failing to object to portions

of the prosecutor's closing argument.  This claim was fully adjudicated during the PCRA

proceedings.  The Superior Court ultimately found that Buchanan was not entitled to relief

on this claim and reasoned as follows:

> First, Buchanan argues trial counsel was ineffective for failing to object to certain statements made by the prosecutor during closing arguments.  *See* Appellant's Brief at 20.  According to Buchanan, the prosecutor provided her personal opinions "that the defense explanations made no sense, [ ] that she personally looked at the physical evidence and believe[d] the [Complainant], and [ ] that she personally knew the jury would return a verdict of guilty because the [Complainant] told the truth."  *Id.* at 22.

> To succeed on an ineffectiveness claim based on trial counsel's failure to object to alleged prosecutorial misconduct, a petitioner must establish that the prosecutor's conduct resulted in the denial of petitioner's constitutional or statutory rights or otherwise denied the petitioner due process.  *See* *Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012) (citation omitted).  "It is well-established that comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014) (citation, internal quotation marks, and brackets omitted).

> Moreover,

> [a] prosecutor must have reasonable latitude in fairly presenting a
> case to the jury and must be free to present his or her arguments
> with logical force and vigor.  The prosecutor is also permitted to
> respond to defense arguments.  Finally, in order to evaluate whether
> the comments were improper, we do not look at the comments in a
> vacuum; rather we must look at them in the context in which they
> were made.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1024 (Pa. Super. 2014) (citation omitted); *see also Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021) ("Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks."  (citation omitted)).  Regarding closing arguments, "a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." *Arrington*, 86 A.3d at 853 (citation omitted).

Recently, in *Reid*, our Supreme Court identified the following test:

> [A] prosecutor commits misconduct by improperly bolstering the
> credibility of a Commonwealth witness when the following two factors
> are met: (1) the prosecutor must assure the jury the testimony of the
> government witness is credible, and (2) this assurance must be
> based on either the prosecutor's personal knowledge or other
> information not contained in the record.

*Reid*, 259 A.3d at 429 (citation and internal quotation marks omitted). Applying this test, the *Reid* Court held that a prosecutor's statement that certain Commonwealth witnesses "told the truth" did not rise to the level of prosecutorial misconduct.  *See id.* at 430.  Although the statement could be interpreted as an assurance that the witnesses' testimony was credible, there was no suggestion that the assurances reflected the prosecutor's personal knowledge or otherwise arose from non-record sources.  *See id.*  Additionally, the Court concluded that defense counsel's closing arguments attempted to impugn the credibility of Commonwealth's witnesses and therefore opened the door for the prosecutor to respond.  *See id.*

Here, the PCRA court applied our Supreme Court's decision in *Reid* and concluded that trial counsel was not ineffective for failing to object to the prosecutor's statements.  The PCRA court conceded that the prosecutor's statements arguably assured the jury Complainant's testimony was credible.

*See* PCRA Court Opinion, 7/18/22, at 12 (unnumbered).  However, the court noted that the prosecutor's arguments were explicitly based on the physical evidence presented at the trial.  *See id.* (citing N.T. (Trial), 11/1/19, at 364); *see also id.* (stating that Buchanan failed to demonstrate that the prosecutor's comments reflected her personal knowledge or other non-record evidence).

In the alternative, the PCRA court concluded that the prosecutor's argument was a reasonable response to issues highlighted in trial counsel's closing argument.  Trial counsel argued that Complainant's testimony was "unbelievable."  *See id.* at 337; *see also id.* at 343 ("Forget about belief beyond a reasonable doubt, any belief whatsoever.").  Trial counsel described the defense witnesses as "straightforward and honest."  *Id.* at 339.  The PCRA court found these statements, as well as the defense's general trial strategy to insinuate the Commonwealth's case was smoke and mirrors, opened the door for response by the prosecutor.  *See* PCRA Court Opinion, 7/18/22, at 12-13 (unnumbered).

Finally, the PCRA court highlighted its instructions to the jury, which reiterated the jury's role as the judges of witness credibility and instructed the jury that counsel's arguments do not constitute evidence.  *See id.* at 13 (citing N.T. (Trial), 11/1/19, at 367-68, 371).

On review, we conclude the PCRA court's findings are supported by the record.  Its application of the law, including our Supreme Court's decision in *Reid*, is legally sound.  We are also unable to conclude that the prosecutor's comments had the unavoidable effect of instilling in the jury a bias against Buchanan such that the jury could not objectively weigh the evidence.  Therefore, Buchanan's underlying claim lacks merit, and he is not entitled to relief on this issue.

*Commonwealth v. Buchanan*, 2023 WL 3167491, at *2-4 (footnote omitted).

To successfully state a claim for habeas relief based upon comments made by a prosecutor at trial, a petitioner must demonstrate that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637

(1974)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (examining a prosecutorial misconduct claim "in light of the record as a whole" in order to determine whether the conduct "'had [a] substantial and injurious effect or influence' " on the jury's verdict). A court evaluating the appropriateness of prosecutorial remarks should consider if the remarks misstated or manipulated evidence, and whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent. *See Darden*, 477 U.S. at 182. Significantly, the concept of "fair response" allows a party to respond to statements made by opposing counsel. *United States v. Robinson*, 485 U.S. 25, 32 (1988).

The state court's disposition of this claim is not an unreasonable application of the Supreme Court precedent. The state court noted that the comments were a fair response to a comment made during defense counsel's closing statement. The state court examined the propriety of the comments, and considered whether the remarks improperly bolstered the credibility of a Commonwealth witness, and whether they implicated other specific rights of the accused. The state court noted that the prosecutor's arguments were explicitly based on the physical evidence presented at the trial. Further, the state court provided pertinent curative instructions including that counsels' speeches are not evidence, and that the jury's finding must solidly be based in evidence. The jury is presumed to have followed the court's explicit instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Based on the foregoing discussion, the Court concludes that the state court decision reasonably applied applicable Supreme Court precedent. It also constituted a reasonable

determination of the facts in light of the evidence presented.  Buchanan is not entitled to

relief on this claim.

**B.     Ground Two—Trial counsel was ineffective for failing to object to questions posed by the prosecutor to the victim's mother**

Buchanan next argues that trial counsel was ineffective for failing to object to

questions posed by the prosecutor to the victim's mother.  Buchanan raised this claim in his

PCRA petition and the PCRA court concluded that the claim was meritless.  In affirming the

PCRA court's conclusion, the Superior Court likewise found no merit to this claim and set

forth the following analysis:

> In his second claim, Buchanan contends trial counsel was ineffective for failing to object to statements made by the prosecutor during Complainant's mother's ("Mother") testimony.  *See* Appellant's Brief at 39.  According to Buchanan, the prosecutor was argumentative and combative, and refused to allow Mother to answer questions.  *See id.*  Buchanan claims the prosecutor's "objectionable conduct" damaged Mother's credibility.  *See id.* at 41.
>
> The PCRA court concluded that technical objections to the prosecutor's statements would have been frivolous because "[t]he [p]rosecutor could easily have split up compound questions and rephrased inappropriate questions, all while allowing the jury to hear the questions and testimony multiple times." PCRA Court Opinion, 7/18/22, at 8.  The court also determined that trial counsel had a reasonable basis for failing to object to some of the argumentative questions.  *See id.*
>
> The record reflects that trial counsel did lodge objections during portions of Mother's cross-examination.  During the PCRA hearing, trial counsel testified regarding his strategy for not objecting more frequently:
>
> > [O]ur strategy was that we had nothing to hide in this case, and I believe I did object more than I normally do to the cross examination of [Mother], and I was trying not to object to every single question, trying not to object over and over again.  I knew I had a right to

redirect her and allow her to finish her answers and rehabilitate a lot
of the damage the prosecution may have done during cross
examination.

N.T. (PCRA), 5/27/22, at 16-17.  Counsel opined that the Commonwealth's
suggestion, *i.e.*, that Mother helped cover up sexual abuse because she and
Buchanan had been fighting, was not believable.  *See id.* at 17.  Accordingly,
the record supports the PCRA court's finding that counsel's alleged inaction
was based on a reasonable trial strategy.  *See Commonwealth v. Spotz*, 84
A.3d 294, 311-12 (Pa. 2014) ("Where matters of strategy and tactics are
concerned, a finding that a chosen strategy lacked a reasonable basis is not
warranted unless it can be concluded that an alternative not chosen offered a
potential for success substantially greater than the course actually pursued."
(citation, internal quotation marks, and brackets omitted)).  We conclude
Buchanan is not entitled to relief on this claim.

*Commonwealth v. Buchanan*, 2023 WL 3167491, at *4.

The PCRA court thoroughly considered trial counsel's effectiveness on the cross

examination of the victim's mother and concluded that "technical objections to the

prosecutor's statements would have been frivolous...trial counsel had a reasonable basis

for failing to object to some of the argumentative questions" and trial counsel did in fact

lodge objections during the cross examination.  *Id.*  It is evident that the Superior Court

reviewed the portion of the PCRA hearing transcript covering trial counsel's strategy, found

trial counsel's testimony concerning the manner in which he objected was based on a

reasonable trial strategy, and concluded that Buchanan's claim lacked arguable merit.  "The

federal habeas statute provides us 'no license to redetermine credibility of witnesses whose

demeanor has been observed by the state trial court, but not by [us].'"  *Weeks v. Snyder*,

219 F.3d 245, 258 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

In taking into consideration counsel's credited testimony at the PCRA hearing concerning his trial strategy, which exhibits sound reasoning as to his decision when to lodge objections, the Court concludes that the Superior Court's reliance on the PCRA court's finding that Buchanan failed to demonstrate that counsel was ineffective was not "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Nor was it contrary to, or an unreasonable application of *Strickland*. Buchanan is not entitled to relief on this claim.

### C.   Ground Three—Trial counsel was ineffective for failing to object to the non-responsive testimony of the Commonwealth's expert

Next, Buchanan alleges that trial counsel was ineffective for failing to object to the non-responsive opinion testimony of the Commonwealth's expert, Roberta Fratzola. Buchanan raised this claim in his PCRA proceedings. Both the PCRA court and the Superior Court found no merit to this claim. The Superior Court concluded as follows:

> In his third claim, Buchanan argues trial counsel was ineffective for failing to object to certain testimony provided by Roberta Fratzola, a licensed professional counselor, who was introduced at trial as an expert in the field of dynamics and sexual abuse of children and delayed reporting. Buchanan specifically directs our attention to the following testimony by Fratzola:
>
> > Well, children—let's put it this way. I only had one child that recanted. They don't lie. Children don't lie about sexual abuse, horrific things that happened to them. They might lie and say when I was a teenager I told my mother a lie that I was going with friends and instead I went with my boyfriend because I wasn't allowed to date, okay. So we do lie about little things. We do fib. But how many of you tried alcohol when you were 15 years old and never told your parents that that happened? But they don't tell lies about horrific things that happened to them, traumatic things like sexual

> abuse. I only had one child again, sir, who recanted. I believe the
> abuse happened, but she recanted because it put her in a bad
> position of her mother crying and having to leave their home and
> putting the family in disarray. I have yet to have a child who has lied
> to me in all the years I've been working.

Appellant's Brief at 29 (citing N.T. (Trial), 10/30/19, at 194-95). According to
Buchanan, Fratzola's statement was not responsive to counsel's question
about factors to consider in determining the truthfulness of someone alleging
sexual abuse. *See id.* at 28-29. Buchanan suggests Fratzola's testimony
amounted to an opinion that Complainant was telling the truth about the
sexual assaults. *See id.* at 31. Buchanan claims that counsel should have
moved to strike the statement. *See id.* at 30-31.3

Expert testimony may be admitted if the witness has specialized knowledge
beyond that possessed by an average layperson; this knowledge is helpful for
the fact finder to understand the evidence or demonstrate a material fact; and
the expert's methodology is generally accepted within the relevant field. *See*
Pa.R.E. 702. However, because credibility determinations are reserved to the
fact finder, expert witnesses may not provide an opinion about the credibility
of other witnesses. *See Commonwealth v. Maconeghy*, 171 A.3d 707, 712
(Pa. 2017).

Here, following a hearing, the PCRA court reviewed the challenged portion of
testimony and determined Fratzola did not render an opinion about
Complainant's veracity. *See* PCRA Court Opinion, 7/18/22, at 9
(unnumbered). The PCRA court concluded that, instead, Fratzola's testimony
suggested "there are no factors when determining whether a child is lying…."
*Id.* Additionally, the PCRA court concluded that even if the jury interpreted
Fratzola's statements as an opinion on the veracity of Complainant, any harm
was *de minimis* given the overwhelming credible evidence against Buchanan.
*See id.*

The PCRA court's determination is supported by the record. Fratzola did not
refer to Complainant, nor did she render a specific opinion about
Complainant's credibility. Rather, the challenged portion of testimony
includes general statements about Fratzola's professional experiences
dealing with child sexual assault victims. Therefore, Buchanan's underlying
claim lacks merit, and he is not entitled to relief on his second issue.

*Commonwealth v. Buchanan*, 2023 WL 3167491, at *4-5 (footnote omitted).

In his PCRA proceedings, Buchanan challenged trial counsel's failure to object to the above testimony provided by Roberta Fratzola. The state court found that Fratzola's testimony was admissible as it did not refer to the Complainant, and Fratzola did not offer a specific opinion about the Complainant's credibility. Specifically, the state court found that the challenged testimony included general statements about the expert's professional experiences with child sexual assault victims and essentially stated that there are no factors to determine whether a child is lying, because in her experience a child never lied to her about sexual abuse. (Doc. 10-1, pp. 271-73).

A federal habeas court is bound by state court determinations of state law and has no authority to review it. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law...binds a federal court sitting in habeas corpus"). Thus, this Court does not disturb the state court's determination that the expert's testimony was admissible under Pennsylvania law and Buchanan's underlying claim lacked merit. Because the state court ultimately concluded that the testimony was admissible and the claim was meritless, this Court agrees with the state court that trial counsel cannot be found ineffective under *Strickland* for failing to raise a meritless claim. Buchanan therefore fails on the first prong of the *Strickland* analysis. The state court's adjudication of this claim was a reasonable

determination of the facts in light of the evidence presented in the state court proceedings.

Habeas relief is not warranted on this claim.

> **D.    Ground Four—Trial counsel was ineffective for withdrawing his motion to pierce the Rape Shield Law**

Lastly, Buchanan argues that trial counsel was ineffective for withdrawing his motion

to pierce the Rape Shield Law.  In affirming the PCRA court's denial of this claim, the

Superior Court found no merit to this claim and set forth the following extensive analysis:

> In his final claim, Buchanan contends trial counsel was ineffective for withdrawing the defense motion to pierce the Rape Shield Law and for otherwise failing to present evidence that Complainant had sexual intercourse with any individuals other than Buchanan.  *See* Appellant's Brief at 33. Buchanan argues that trial counsel could have submitted evidence of Complainant's sexual encounters with her minor boyfriend, Z.P.  *See id.* at 34.  According to Buchanan, such evidence was "narrowly tailored" to contradict testimony by the Commonwealth's expert witness.  *See id.* at 35-36.
>
> Pennsylvania's Rape Shield Law limits the admissibility of an alleged victim's prior sexual conduct:
>
>> Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) [which includes, relevantly, Chapter 31 (pertaining to sexual offenses) and Section 6301 (corruption of minors)] except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
>
> 18 Pa.C.S.A. § 3104(a).

The Rape Shield Law is intended to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Moreover, the Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Jerdon*, 229 A.3d 278, 285 (Pa. Super. 2019) (citations, quotation marks and brackets omitted).  When applying the Rape Shield Law, "past sexual conduct" has been interpreted to include a complainant's sexual history at any time prior to trial.  *See Commonwealth v. Jones*, 826 A.2d 900, 908 (Pa. Super. 2003) (*en banc*).

However, evidence of a complainant's sexual conduct with a third party may be admissible in certain limited circumstances.  *See Commonwealth v. Largaespada*, 184 A.3d 1002, 1007 (Pa. Super. 2018) (recognizing exceptions to the Rape Shield Law for "evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility." (citation omitted)).  Such evidence must be probative of whether the defendant committed the alleged conduct.  *See id.* at 908-09.  When a defendant seeks to introduce evidence that may be barred by the Rape Shield Law, a court must conduct an *in camera* hearing and balance several factors.  *See Jerdon*, 229 A.3d at 286-86.  "[E]vidence of a claimant's sexual history may be admissible if the evidence is relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature."  *Id.* at 286 (citation omitted).

The record reflects that prior to trial, Buchanan filed a motion *in limine* to allow evidence that Complainant also engaged in sexual intercourse with Z.P. beginning in approximately August 2017.  See Motion *in Limine*, 7/19/19. Buchanan argued this evidence was relevant to challenge Complainant's credibility and offer a possible motive, in light of the Commonwealth's evidence that Complainant became pregnant in August 2017 and had an abortion in October 2017.  *See id.*  After the *in camera* hearing, Buchanan withdrew the motion.

Trial counsel testified at the PCRA hearing about his trial strategy.  Trial counsel testified that, initially, he wanted to introduce Z.P. as a witness because the Commonwealth's expert would testify that Complainant had previously had sexual intercourse and offering Z.P.'s statements would point to someone other than Buchanan.  *See* N.T. (PCRA), 5/27/22, at 9-10. However, trial counsel recognized that the case would ultimately depend upon the jury's respective credibility determinations:

[I]t was going to come back to a question of credibility between [Buchanan] and [Complainant].  That was our trial strategy from the very beginning.

And [Complainant's] testimony, the statements that she had given prior to trial…seemed incredible, and we were concerned—I was concerned that, first of all, I didn't think we were going to win the motion [to] pierce the Rape Shield Law.  That was the impression I had.

Second of all, if we did win it then there was going to be an avalanche of evidence coming in, including relating to the pregnancy, the attempt at the abortion, the miscarriage.  And given the fact that [Z.P. and Complainant] both said that they had only had sex twice, that they used a condom both times, I thought that a jury—there was more of a chance of all of this testimony hurting [Buchanan] than helping him, let's put it that way.

Even if the trial [j]udge allowed the piercing of the Rape Shield Law and even if we got in everything we wanted to get in, it came down to a question of did he, in fact, do it?  And if he did it, none of this really matters if the jury believed [Complainant].

So my strategy—and I talked this over with [Buchanan]—was to try to keep it as simple as possible….

*Id.* at 12-13; *see also id.* at 14 ("I thought our strategy would be to keep it simple and hope they believed [Buchanan] over [Complainant].").  Further, trial counsel testified that, regarding information about Complainant's pregnancy, "there was no evidence to indicate that it wasn't [Buchanan's] or that it was somebody else's."  *Id.* at 13.  In light of the overall trial strategy to establish Buchanan never touched Complainant, trial counsel also expressed concern that introducing evidence of Complainant's sexual encounters with Z.P. would "look like we were trying to cover up what happened."  *Id.* at 13-14.

The PCRA court concluded that trial counsel had a reasonable basis for withdrawing the motion to pierce the Rape Shield Law.  *See* PCRA Court Opinion, 7/18/22, at 7 (unnumbered).  After reviewing counsel's testimony

regarding his trial strategy, we agree.  The record confirms that trial counsel
fully considered the evidence against Buchanan and the potential that the
proffered evidence would hurt Buchanan's defense.  Buchanan fails to
establish that admitting evidence of Z.P. would have resulted in a
substantially higher chance of success at trial.  *See Spotz*, 84 A.3d at 311-12.
Therefore, Buchanan is not entitled to relief on this claim.

*Commonwealth v. Buchanan*, 2023 WL 3167491, at *5-7.

The Superior Court addressed this claim in a cogent fashion.  The state court

concluded that Buchanan's claim that trial counsel was ineffective for withdrawing his

motion to pierce the Rape Shield Law was meritless and trial counsel pursued a reasonable

defense strategy, thus, Buchanan was not entitled to relief on this claim.  This determination

is a reasonable application of *Strickland*.  Under the first prong of the *Strickland* analysis,

there is a strong presumption that counsel's conduct falls within the "wide range of

reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  And "the defendant must

overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'"  *Id.* (quoting *Michel v. State of La.*, 350 U.S. 91, 101

(1955)).  The court is required to not only give the attorney "the benefit of the doubt,…but to

affirmatively entertain the range of possible 'reasons…counsel may have had for

proceeding as they did.'"  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citations omitted).

The state court reasonably concluded that trial counsel had a reasonable basis for

withdrawing the motion to pierce the Rape Shield Law, that trial counsel believed that the

proffered evidence would hurt the defense, and that Buchanan failed to establish that

admitting the evidence would have resulted in a substantially higher chance of success at trial.  Buchanan therefore fails on the first prong of the *Strickland* analysis.

The state court conclusively determined that Buchanan's trial counsel pursued a reasonable defense strategy, and hence did not render ineffective assistance of counsel. The state court's adjudication of this claim was a reasonable determination of the facts in light of the evidence presented in the state court proceedings.  The Court will deny habeas relief on this claim.

## V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.  As the Supreme Court has explained,

> "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Buchanan failed to demonstrate that a certificate of appealability should issue.

## VI.   Conclusion

The Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June 2️⃣1️⃣, 2024